## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (hereinafter "Agreement") is entered into by and between Kristi D. Guetersloh ("Plaintiff") and Gryphon Group, LLC ("Gryphon"), Matt Connelly ("Connelly"), and Jack Tuplin ("Tuplin") (collectively, "Defendants") as set forth below.

## RECITALS

A.     Certain claims, demands and differences existed between Plaintiff and Defendants, including Plaintiff's contention that Defendants failed to pay overtime wages for all the hours Plaintiff performed work for Defendants in violation of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"), and Defendants' contention that Plaintiff was an independent contractor, or alternatively, an exempt employee.

B.     Plaintiff filed suit on July 8, 2015.  The action is styled *Kristi D. Guetersloh v. Gryphon Group, LLC, Matt Connelly, and Jack Tuplin*, Civil Action No. 3:15-cv-2264-D  (the "Lawsuit"), in the United States District Court for the Northern District of Texas, Dallas Division ("the Court").

C.     Plaintiff is represented in the Lawsuit by JENKINS & WATKINS, PC ("Plaintiff's Counsel").

D.     Defendants are represented in the Lawsuit by OGLETREE, DEAKINS, NASH, SMOAK, & STEWART, P.C.

E.     The parties hereto have investigated the legal and factual issues related to the claims and defenses in the Lawsuit.

F.     The mutual costs, risks, and hazards of continuing to prosecute and defend the Lawsuit have led the parties to resolve the Lawsuit by way of settlement.

G.     Defendants have denied and continue to deny each of the material claims and contentions alleged in the Lawsuit. Neither this Agreement, nor any document referred to or contemplated herein, nor any action taken to carry out this Agreement, is or may be construed or used in the Lawsuit or in any other action or proceeding as an admission, concession, or indication by or against Defendants of any fault, wrongdoing, or liability whatsoever.

H.     It is the intention of the parties to this Agreement to settle and dispose of, fully and completely, any and all claims, demands and causes of action that Plaintiff has or may have against Defendants.

## PROVISIONS

## 1.     COOPERATION BY THE PARTIES

The parties to this Agreement and their counsel agree to cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms and conditions of this Agreement.

Ex. A                                                                                                    1

## 2.    CONSIDERATION BY DEFENDANT

In consideration for the release and dismissal set forth in this Agreement, Defendants agree to pay the Maximum Settlement Amount in accordance with this Agreement.

a.    "Maximum Settlement Amount"

The "Maximum Settlement Amount" refers to the maximum payment Defendants are responsible for making under this Agreement to Plaintiff and Plaintiff's Counsel. The amount includes payment for the following: unpaid overtime pay, liquidated damages, attorneys' fees, costs, expenses, and employee-paid withholding and payroll taxes (including federal income taxes, social security contributions and unemployment taxes). The Maximum Settlement Amount is the total sum of Thirty Thousand and 00/100 ($30,000.00) Dollars.

(1)    In addition to the Maximum Settlement Amount, Defendants shall be responsible for paying all employer-paid withholding and payroll taxes and similar expenses (including federal income taxes, social security contributions and unemployment taxes) as required by law with respect to settlement payments. Plaintiff will be responsible for her own tax obligations, if any.

(2)    Defendants' sole monetary obligations under this Agreement shall be the payments as described in this Agreement and the employer-paid withholding and payroll taxes.

(3)    The payment to Plaintiff will be divided into equal parts. One half of the total amount will be designated as unpaid wages and subject to federal employment taxes including income tax withholding (using a W-4 to be provided by Plaintiff) and FICA tax withholding of 7.65 percent. This payment will be reported on IRS Form W-2 for the calendar year in which it is actually paid. The second half of the total award will be considered as liquidated damages and will be reported by Defendants on IRS Form 1099-MISC as other income for the calendar year in which it is paid. No taxes will be taken from this portion of the settlement amount.

(4)    The gross payment to Plaintiff, which is to be paid from the Maximum Settlement Amount, is Seventeen Thousand Five Hundred One and 92/100 ($17,501.92) Dollars.

(5)    "Attorneys' Fees and Costs," which are to be paid from the Maximum Settlement Amount, refers to the amount to be paid to Plaintiff's Counsel for representing Plaintiff. The amount of Attorneys' Fees and Costs is Twelve Thousand Four Hundred Ninety-Eight and 08/100 ($12,498.08) Dollars and will be made payable to JENKINS & WATKINS, A PROFESSIONAL CORPORATION TRUST ACCOUNT.

Ex. A                                                                        2

b.   <u>Delivery</u>

The settlement checks shall be delivered to Plaintiff's Counsel within fourteen (14) calendar days of the Court's approval of this Agreement, the Court's dismissal of the Lawsuit, and Defendants' receipt of W-9's from Plaintiff and Plaintiff's Counsel and a W-4 from Plaintiff.

**3.   DISMISSAL OF ACTION**

The parties will file a joint motion seeking approval of this Agreement and requesting the Court to enter an order dismissing the Lawsuit with prejudice, incorporating this Agreement in the order, and providing that the Court retains jurisdiction over this Agreement.

**4.   COSTS**

Defendants shall bear their own costs, expenses, and attorneys' fees incurred in connection with or arising out of the Lawsuit.

**5.   GENERAL RELEASE OF CLAIMS**

a.   In consideration of the payment described above, together with other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Plaintiff, on behalf of Plaintiff and Plaintiff's Counsel, agents, assigns, representatives, and designees, hereby knowingly, voluntarily, fully, finally, and completely SETTLES, RELEASES, AND FOREVER DISCHARGES Defendant, as well as its employees, attorneys, partners, agents, assigns, representatives, designees, insurers, plan administrators, parent companies, subsidiaries, affiliated companies, and other related persons or entities, including their predecessors, successors, and equity and asset purchasers, together with their respective officers, directors, members, managers, shareholders, partners (general and limited), agents, owners, legal representatives, servants, and employees, and the assigns, heirs, privies, predecessors, and successors, and insurers of each such person or entity in their individual, corporate, or official capacities, (collectively, the "Company Releasees") from each and every grievance, administrative claim or proceeding, dispute, claim, demand, arbitration, controversy, action, or cause of action, of whatever kind, character, or nature, known or unknown, arising from, relating to, or connected with acts or omissions at any time prior to and including the date Plaintiff executes this Agreement. This general release includes without limitation all claims that in any way arise from, relate to, or are in any way connected with the allegations in the Lawsuit or Plaintiff's employment with and/or separation from Defendant, regardless of whether or not same (i) are presently known or unknown, (ii) have been specifically referenced, claimed, asserted, or made by either of the parties, or (iii) are statutory, contractual, or common law in nature or basis.

b.   Without limiting the generality or comprehensiveness of subsection (a), Plaintiff knowingly, voluntarily, fully, finally, and completely WAIVES, RELEASES, AND FOREVER DISCHARGES the Company Releasees from all claims, actions, causes of action, or demands existing as of the date of this Agreement, including without limitation any and all claims for injunctive relief; attorneys' fees; expenses; costs; actual, compensatory, exemplary, or punitive damages; physical injuries; personal injuries; emotional injuries; mental anguish; physical pain and suffering; wrongful discharge; any claims Plaintiff may have under, without limitation,

Ex. A                                                                                    3

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Texas Labor Code, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Uniformed Services Employment and Reemployment Rights Act, or any other civil rights statutes; harassment and/or discrimination because of sex, race, color, national origin, religion, age, disability, veteran's status, the filing of a workers' compensation claim, or other protected classification; retaliation; incapacity; failure to pay proper wage, minimum wage, and/or overtime wages; unpaid wages; loss of wages; loss of earning capacity; loss of job security; humiliation; physical impairment and/or disfigurement; loss of consortium; harm to reputation; libel, slander, or defamation; medical expenses; personal property damage, loss, or diminution in value; negligence; gross negligence; strict liability; malice; invasion of privacy; intentional infliction of emotional distress; negligent infliction of emotional distress; assault or battery; loss or diminution of career advancement; loss of dignity; any and all claims arising under any other federal, state, or local statue, law, ordinance, rule, regulation, or order prohibiting employment discrimination or retaliation; any claim under tort, wrongful discharge, breach of contract, or breach of agreement; and any other theory, claim, or cause of action whatsoever, whether known or unknown.

c.    By signing this Agreement, it is Plaintiff's intent to waive and release all claims and potential claims existing as of the date of this Agreement against the Company Releasees. In the unlikely event that a claim or potential claim has been omitted from this general release, Plaintiff hereby assigns and conveys said claims and potential claims to Defendants in exchange for Defendants' obligations in this Agreement.

d.    Other than the Lawsuit, Plaintiff represents and warrants that she has not filed any lawsuits or actions with any federal, state, or local court against any of the Company Releasees, nor has she filed any charges or complaints with any federal, state, or local agency against any of the Company Releasees.   Nothing in this Agreement prohibits Plaintiff from filing an administrative charge or complaint, or otherwise communicating with or participating in an investigation by, a federal, state, or local agency governing employee rights; however, by signing this Agreement, Plaintiff waives Plaintiff's right to recover any damages or other relief in any claim or suit brought by Plaintiff, or by or through a federal, state, or local agency on Plaintiff's behalf, against any of the Company Releasees under any federal, state, or local law, except where prohibited by law.

e.    Nothing in this Agreement in any way affects or releases Plaintiff's claim for, or entitlement to, unemployment benefits under the Texas Unemployment Compensation Act.

6.    **MEDICARE**

a.    This settlement is based upon a good-faith resolution of a disputed claim.  The Parties have not shifted responsibility for medical treatment to Medicare in contravention of 42 U.S.C. § 1395y(b).  The Parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms, and to comply with both federal and state law.  The Parties acknowledge and understand that any present or future action or decision by the Centers for Medicare & Medicaid Services or Medicare on this settlement, or Individual's eligibility or

Ex. A                                                                                      4

entitlement to Medicare or Medicare payments, will not render this Agreement void or ineffective, or in any way affect the finality of this settlement.

b.      Plaintiff declares and expressly warrants that Plaintiff is not Medicare eligible, is not a Medicare beneficiary, and is not within thirty (30) months of becoming Medicare eligible. Plaintiff is not 65 years of age or older; Plaintiff is not suffering from end state renal failure or amyotrophic lateral sclerosis; Plaintiff has not received Social Security benefits for twenty-four (24) months or longer; and Plaintiff has not applied for Social Security benefits and/or has not been denied Social Security disability benefits and is appealing the denial.

c.      Because Plaintiff is not a Medicare recipient as of the date this Agreement, Plaintiff is aware of no medical expenses that Medicare has paid and for which any of the Company Releasees are or could be liable now or in the future.  Plaintiff agrees and affirms that, to the best of Plaintiff's knowledge, no liens of any governmental entities, including those for Medicare conditional payments, exist.

**7.      INDEMNIFICATION**

a.      Plaintiff agrees to hold the Company Releasees harmless from, and to defend and indemnify the Company Releasees from and against, all further claims, cross-claims, third-party claims, demands, costs, complaints, obligations, causes of action, damages, judgments, liability, contribution, or indemnity related in any way to allegations that could have been made by Plaintiff with respect to the claims and causes of action released as part of this Agreement, as well as any claims that may be made indirectly against the Company Releasees for contribution, indemnity, or otherwise by any third party from whom or which Plaintiff seeks relief or damages, directly or indirectly, for the same claims and/or causes of action released as part of this Agreement, regardless of whether such claims are caused in whole or in part by the negligence, acts, or omissions of any of the Company Releasees.

b.      Plaintiff warrants that Plaintiff is not relying on the judgment or advice of any of the Company Releasees or their counsel concerning the tax consequences, if any, of this Agreement.

**8.      NO ADMISSIONS**

This Agreement is not and shall not in any way be construed as an admission by any of the Company Releasees of any acts of liability or fault whatsoever with respect to Plaintiff or any other person, or that Defendants violated any federal, state, or local law, or that Defendants' actions were unwarranted, intentional, willful, discriminatory, retaliatory, or otherwise unlawful, and instead constitutes the good-faith settlement of disputed and unresolved claims.  Defendants specifically deny and disclaim any liability to Plaintiff or any other person or entity and contend Plaintiff's allegations are wholly without merit.

**9.      NON-WAIVER**

Any failure of Defendants to enforce its rights and privileges under this Agreement shall not be deemed to constitute waiver of any rights and privileges contained herein.

Ex. A                                                                                          5

## 10.    ENTIRE AGREEMENT

This Agreement supersedes any and all prior agreements, arrangements, or understandings between the parties regarding the subject matter herein.  The parties acknowledge and agree that there have been no representations, promises, understandings, or agreements made by either party as an inducement for the other party to enter into this Agreement other than what are expressly set forth and contained in the terms of this Agreement.  The parties further agree that no evidence of prior promises, commitments, agreements, arrangements, or understandings, nor any oral statements of any kind, can be used to attempt to alter, amend, modify, or in any way change the written terms of this Agreement.  Furthermore, the parties cannot agree orally to alter, amend, modify, or in any way change the terms of this Agreement, and can make such alterations, amendments, modifications, or changes only in a written document that references this Agreement specifically and is signed by an authorized representative of each party.

## 11.    NO ASSIGNMENT

Plaintiff hereby represents and warrants that Plaintiff has not assigned, pledged, placed a lien upon, or otherwise in any manner sold or transferred, or purported to assign or transfer, either by instrument in writing or otherwise, any interest in any claim, demand, action, and/or cause of action Plaintiff has or may have against any of the Company Releasees, except to Plaintiff's attorney which has been satisfied by the consideration in paragraph 2.  Plaintiff represents and warrants that Plaintiff has made no assignment for the benefit of creditors and she has not filed any bankruptcy proceeding that is affected by this settlement.

## 12.    NULLIFICATION OF AGREEMENT

In the event the Court does not approve this Agreement, this Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this settlement shall be treated as void *ab initio*.  In such event, the parties hereto and any funds to be awarded under this settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the parties shall proceed in all respects as if this Agreement had not been executed.

## 13.    GOVERNING LAW

This Agreement is made and entered into in the state of Texas and shall be interpreted, enforced, and governed under the laws of the state of Texas, except the normal rule of construction that ambiguities shall be construed against the drafter shall not be employed in the interpretation of this Agreement.

## 14.    SEVERABILITY

The parties agree that the provisions of this Agreement are severable and that, if any clause or clauses are found to be unenforceable, the entire Agreement shall not fail, but shall be construed or enforced without any severed clauses in accordance with the terms of this Agreement.

Ex. A                                                                            6

## 15.    ATTORNEYS' FEES

In the event either party commences an action in law or equity to enforce its or her rights under any provision of this Agreement, the prevailing party in such action shall be awarded reasonable attorneys' fees and costs incurred in connection with such action even if the prevailing party is entitled to only nominal damages.

## 16.    COUNTERPARTS

This Agreement can be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument for the same effect as if all parties hereto had signed the same signature page.  A facsimile or e-mail copy of any party's signature or an electronic signature shall be deemed as legally binding as the original signature.

## 17.    REPRESENTATIONS AND WARRANTIES

The parties represent and warrant that:  (a) they have consulted with the respective counsel of their own choosing prior to executing this Agreement and are relying upon their own and their attorney's judgment, belief, and knowledge with respect to the terms and effect of this Agreement; (b) none of the parties is relying on another party, or another party's attorneys, for any advice or counsel, whether same is legal, tax, or other advice; (c) the parties have not been induced to enter this Agreement by a statement, action, or representation of any kind or character made by the persons or entities released under this Agreement, or any person or persons representing them, other than those expressly made in this Agreement; (d) the parties are legally competent to execute this Agreement; (e) they have carefully read and understand this Agreement, and have executed it freely, voluntarily, and without duress; (f) they are fully and completely informed of the facts relating to the subject matter of this Agreement, the claims being compromised are disputed, and all enter into this Agreement voluntarily after having given careful and mature consideration of the making of this Agreement; (g) they fully understand and intend this Agreement to be a full, final, and complete resolution of all matters described herein; and (h) they have actual authority to execute this Agreement.

Ex. A

7

Krish D. Guetersloh

Date: 10-6-15

Gryphon Group, LLC

Printed Name: Matthew J. Connelly

Its: _____

Date: 10-7-15

Matt Connelly

Date: 10-7-15

Jack Tuplin

Date: 10-7-15

22530697.1

Settlement Agreement
Page 8 of 8

Ex. A

8